UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-10059-CIV-MARTINEZ/BROWN

PATRICK SCHAUENBURG,
an individual,

    Plaintiff,

v.

KEY WEST TOURS, INC., a Florida
Corporation d/b/a BLUE LAGOON
WATERSPORTS, WILSON-GIRARD,
INC., d/b/a BLUE LAGOON
WATERSPORTS, TROY WILSON,
SHERRY WILSON, d/b/a BLUE
LAGOON WATERSPORTS,
MIRAGE INTERNATIONAL, INC.,
a Florida corporation, and ROBERT P.
TYLLA, an individual

    Defendants.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, PATRICK SCHAUENBURG, ("Schauenburg") by and through undersigned counsel and pursuant to Rule 56, Fed.R.Civ.P., hereby files his Response to Defendants' Motions for Summary Judgment and Incorporated Memorandum of Law, stating as follows:

On or about June 8, 2009, Defendants, Key West Tours, Inc., Wilson-Girard, Troy Wilson and Sherry Wilson (together "Blue Lagoon" or "Defendants"), filed two *separate* motions for summary judgment: (1) "Defendants Wilson-Gerard, Inc., Troy Wilson, and Sherry Wilson's Motion For Summary Judgment Regarding Proper Parties" [DE 71]; and, (2) "Defendant Key West Tours, Inc., a Florida Corporation, d/b/a Blue Lagoon Watersports, Wilson-Gerard, Inc., d/b/a Blue Lagoon Watersports, Troy Wilson, Sherry Wilson's Motion For

Summary Judgment" [DE 72]. Rather than filing a separate Response to each, Plaintiff responds to both of Defendants' Motions herein.[1] For the reasons more fully set forth below, neither of Defendants' Motions should be granted as a matter of law.

## MEMORANDUM OF LAW

**I.  Defendants Wilson-Gerard, Inc., Troy Wilson and Sherry Wilson Are Proper Parties To This Action.**

In what amounts to a three-page Motion, Defendants argue that Wilson-Gerard, Inc., Troy Wilson and Sherry Wilson are not "proper parties" to the instant action.[2]

In supposed support of this notion, Defendant claims simply that Defendant Key West Tours, Inc., was the operator of a concession which rented the jet skis to Plaintiff Patrick Schauenburg and Robert Tylla. Motion at ¶ 4. Defendants further maintain that Defendant Key West Tours was the owner, and lessor, of the subject jet skis. Motion at ¶ 8. The remaining Blue Lagoon Defendants, so they allege, had nothing to do with the rental or the ownership of the jet skis rented to Schauenburg or Tylla.

Defendants offer nothing to substantiate their bare allegations. Concurrently herewith, Plaintiff has submitted his Statement of Undisputed Material Facts In Opposition to Defendants'

---

[1]  In disregard of Rule 56, Fed.R.Civ.P., as well as Rule 7.5 of the Local Rules for the Southern District of Florida, Defendants piecemeal Motions do not include a separate, concise statement of material facts to which Defendants claim there is no genuine issue to be tried, and are thus improper.

[2]  Except for the paltry bit of case law cited regarding the standard for a summary judgment, Defendants set forth no law supportive of their request for a summary judgment. Even more importantly, while Defendants make cursory reference to certain deposition testimony (see Motion Re Proper Parties [DE 71] at ¶¶ 8 & 10), no page numbers to the deposition(s) are offered with which to discern the accuracy of the proposition for which the deposition(s) is/are referenced. Finally, Defendants promise future filings to supplement the instant Motion (See Motion re Proper Parties [DE 71] at ¶ 11); to date, no such filings have occurred. To this extent, formulating a response to Defendants' Motion is difficult at best.

Motion For Summary Judgment Regarding Proper Parties (hereinafter "Pl's SMF in opposition"). As Plaintiff explains, despite their promise to do so, Defendants have produced *nothing* indicative of their allegation that Key West Tours owned the jet skis at issue. (See Pl's SMF in opposition at ¶ 3).

Further, the Release agreement touted by Defendants (see, infra at Section II A) does not identify Key West Tours or any other person/entity as the rental agent (see Pl's SMF in opposition at ¶ 5). It seems the "Rental Agent" is intentionally left unidentified, requiring renters to guess as to which person or entity is responsible for the rental. (Id.). Even though the corporate entity owning the Motel, Mirage, Inc. (formerly a defendant in this case) is specifically identified by name, Defendants' lease agreement with the Blue Lagoon Motel, likewise fails to identify Key West Tours; instead, Defendant Wilson-Girard is given as the lessee. (See Pl's SMF in opposition at ¶ 2). Although Defendants claim that the corporation Wilson-Girard ceased doing business in May of 2005, prior to the subject incident, the lease with the Blue Lagoon Motel was never assigned to Key West Tours. (Id.).

Perhaps more revealing, subsequent to the jet ski accident, the Defendants initiated a suit in small claims court, suing Robert Tylla for damages to their jet skis for which they claimed was Tylla's fault. (See Pl's SMF in opposition at ¶ 4). The suit ultimately settled and the parties entered into a Settlement Agreement which identifies Defendants Troy and Sherry Wilson as the owners of Blue Lagoon Watersports, interested parties to the suit, and also contains a release for damages to the jet skis from the Wilsons to Tylla. (Id.). The Settlement Agreement lists the Wilsons as the Plaintiffs in the small claims suit; as consideration, Tylla funded the settlement via a check made out to Troy Wilson. (Id.). Nowhere in the Settlement Agreement, or the correspondence related to the suit, is there any indication that Key West Tours was the owner or

3

lessee of the jet skis. Question obviously arises: if the Wilsons held no ownership interest in the jet skis, how could they file action against Tylla and enter into a Settlement Agreement listing themselves as Plaintiffs; more importantly, why was the settlement check made out to Troy Wilson, individually? It would seem disingenuous to claim ownership in a suit seeking money from Tylla and later attempt to hide behind a corporate name, claiming non-ownership of the very same jet skis.

Finally, with respect to "Blue Lagoon Watersports", such is not a legally-recognized entity, but simply a d/b/a ("doing business as") created by Defendants. *See* Osmo Tec SACV Co. v. Crane Envtl., Inc., 884 So.2d 324, 327 (Fla. 2d DCA 2004) (noting that a fictitious name has no independent legal existence).[3] Although Troy Wilson testified that the fictitious name was registered with Florida's Division of Corporations, Blue Lagoon Watersports has not, in fact, been registered. (See Pl's SMF in opposition, at ¶ 6). There is nothing to show that Blue Lagoon Watersports has been registered as a d/b/a for Key West Tours, Inc. It is clear, however, that Defendants Wilson-Girard, Troy Wilson and Sherry Wilson were all acting under the fictitious name of Blue Lagoon Watersports. In attempting to hide behind the auspices of a corporate entity for cover against the instant litigation, Defendants use the corporate entity in a classic sword and shield argument.

To be sure, while Defendants may now want to portray Key West Tours, Inc., as the owner/lessee of the watercraft rental facility, for liability purposes, to date, Defendants have not provided proof that Key West Tours is, to the exclusion of the other Blue Lagoon Defendants,

---

[3] "The purpose of the fictitious name statute is to provide notice to one dealing with a business of the real party in interest." Roth v. Nautical Eng'g Corp., 654 so.2d 978, 980 (Fla. 4th DCA 1995); *see also*, Robinson & St. John Advertising & Pub. Relations, Inc. v. Lane, 557 So.2d 908, 909 (Fla. 1st DCA 1990) (section 865.09 is designed to provide notice of identities of persons doing business under fictitious names for purpose of protecting from fraud and deceit).

4

the only entity or person who is the proper party to this litigation.  To the contrary, the Wilsons, who identified themselves as owners of Blue Lagoon Watersports in related state court litigation, are proper parties to this action.  As such, Defendants' Motion For Summary Judgment Regarding Proper Parties must be denied.

> II.  **Defendants' Proffered Release Is Unenforceable As a Matter of Law; Defendants Have Not Met Their Burden To Show That Their Statutory Violation Could Not Have Caused or Contributed To The Subject Accident.[4]**

In their second Motion, Defendants claim that liability cannot, as a matter of law, be found where Plaintiff expressly released them from liability by signing a rental agreement that contained a Release provision.  Defendants also argue that judgment should be summarily entered in their favor where Plaintiff cannot demonstrate that Defendants' statutory violations caused or contributed to the jet ski accident.  These arguments are addressed in turn.[5]

> A.  **The "Release"**

Defendants first argue that, based upon the plain language of the Release they required Plaintiff and Tylla to sign, Plaintiff has discharged Defendants from all liability arising from the jet ski accident and, thus, Defendants are entitled to judgment as a matter of law.

---

[4]  By its heading, Defendants' Motion appears to request a summary judgment on behalf of all the Blue Lagoon Defendants.  However, both the body of the Motion and the "Conclusion" and "Wherefore" clause request judgment solely on behalf of Defendant Key West Tours.

[5]  As noted above, Defendants fail to set forth a statement of material facts not in dispute; however, to the extent that the factual allegations contained in the body of Defendants' Motion can be considered as statements of material facts, Plaintiff disputes these statements.  In particular, Plaintiffs dispute the inference contained in paragraph 4 of Defendants' Motion that Plaintiff and Robert Tylla rented jet skis exclusively from Key West Tours, Inc.  Plaintiff also disputes the allegations in paragraph 6 of Defendants' Motion to the extent that Defendants are alleging that Plaintiff or Tylla acknowledged receiving the pre-ride instructions as required by Florida's safety statutes regarding liveries.  Additionally, Plaintiff disputes that he failed to maintain a 100 yard distance from any other jet ski or that he was responsible, in any way, for the subject collision, as alleged in paragraph 8 of Defendants' Motion.  Any and all other unsupported allegations concerning statements made by anyone is disputed, unless expressly admitted herein.

5

In his Motion for Partial Summary Judgment [DE 62], Plaintiff set forth case law directly determinative of the issue:

> "[A] clause in an agreement exempting a party from tort liability is unenforceable on grounds of public policy if the agreement would exempt a party from liability arising from that party's failure to comply with a safety statute, as the safety obligation created by the statute for such purpose is an obligation created by the statute for such purpose is an obligation owed to the public at large and is not within the power of any private individual to waive." . . . In this case, the Florida statutes violated are boater safety statutes imposing a standard of conduct on owners and liveries of vessels. It would be against public policy to enforce contract clauses purporting to exempt liveries from liability for violating these statutes. While the release and waiver provisions in the rental contracts are sufficient to release Defendant from liability for ordinary negligence, the provisions are invalid as against public policy when applied to liability arising from violation of these statutes.

Tassinari v. Key West Water Tours, L.C., No 06-10116-CIV, 2007 WL 1879172, * 5 (S.D. Fla. June 27, 2007).  Defendants have, *admittedly*, failed to comply with Florida's boater safety statute, § 327.54(1)(e), Fla. Stat.[6]—a statute which was "enacted, in part, to protect the safety of renters of watercraft". Tassinari, supra at * 3-4.  As renters of Defendants' jet skis, Patrick Schauenburg and Robert Tylla are "among the class of persons intended to be protected" by § 327.54(1)(e). Id. at * 3.  Accordingly, Defendants' proffered Release cannot shield them against liability arising from their failure to abide by the obligations statutorily imposed upon them; consequently, summary judgment must be denied Defendants, as a matter of law.[7]

---

[6]  Defendants have admitted that their violation of Florida boating safety statutes specifically geared toward vessel liveries, conceding that whatever pre-ride instructions provided to Schauenburg and Tylla were not delivered by a person who had "successfully completed a boater safety course approved by the National Association of State Boating Law Administrators and this state." Fla. Stat. --- 327.54(1)(e).

[7]  See Tassinari, supra at * 5. *Accord*, Loewe v. Seagate Homes, Inc., 987 So.2d 758, 760 (Fla. 5th DCA 2008) (release or exculpatory clause which attempts to prospectively insulate a party from liability for violating a statute or ordinance enacted to protect public is unenforceable

### B. **Proximate Cause**

Defendants begin their argument by correctly acknowledging the Tassinari case and that the rule of law relied upon therein "shifts the burden of proof for demonstrating causation" in a negligence action where a defendant's violation of a safety statute results in negligence per se. Motion at p. 7. See also, Tassinari, supra at * 4. Yet, while specifically recognizing that the burden is now *upon them* to demonstrate "causation, or in this case, the lack of causation" (Motion at p. 7), Defendants conversely claim that judgment should be entered in their favor as *Plaintiff* has failed to meet *his* burden of demonstrating causation.

To be sure, as Defendants' *admitted* violation of Fla. Stat. § 327.54(1)(e) constitutes negligence per se,[8] the burden is shifted and rests squarely upon Defendants to show not merely that their statutory violation probably did not cause or contribute to the accident, "but that **it could not have been**" a contributing cause of the accident. Tassinari, supra, at * 2 (emphasis added). Defendants stretch to make this argument by claiming that it is undisputed that Robert Tylla solely caused the accident by slamming into Plaintiff Schauenburg's jet ski; this,

---

as against public policy); VoiceStream Wireless Corp. v. U.S. Communications, Inc., 912 So.2d 34, 38 (Fla. 4th DCA 2005) ("a party cannot waive liability imposed by statutory provisions that are intended to protect both an individual and the public because to do so would be contrary to public policy"); Holt v. O'Brien Imports of Fort Myers, Inc., 862 So.2d 87, 89 (Fla. 2d DCA 2003) ("[A]n individual cannot waive the protection of a statute that is designed to protect both the public and the individual."); see also, 11 FLA. JUR.2D CONTRACTS --- 126 ("[W]here public policy would be frustrated by permitting the enforcement of an exculpatory clause that effectively immunizes a party from liability from breach of a positive statutory duty to protect the well-being of others, the exculpatory clause will not be enforced.").

[8]     As Fla. Stat. § 327.54 was "enacted, in part, to protect the safety of renters of watercraft", a violation of this statute constitutes negligence per se. Tassinari, supra, at * 3-4. Under Florida law, negligence per se is the violation of a statute "which establishes a duty to take precautions to protect a particular class of persons from a particular injury." deJesus v. Seaboard Costa Line R. Co., 281 So.2d 198, 201 (Fla. 1973).

Defendants relate, unequivocally means that Defendants bear no responsibility for the accident. Motion at p. 8.

But, the fact that Tylla did not observe the 100-yard rule, when he crashed into Schauenburg, does not mean that Defendants bear no responsibility for the accident. Certainly Defendants' failure to properly provide pre-ride safety instructions to Schauenburg and Tylla,[9] can be the cause or a contributing factor to the accident. In particular, in sending Tylla—a statutorily inadequately trained individual, *who had never before operated a jet ski* [10]--out on the water on one of their jet skis, Defendants placed other jet skiers, including Schauenburg, directly in harm's way. Had Blue Lagoon provided safety instructions *in complete compliance with statutory mandate*, it is surely conceivable that, if adequately trained, Tylla would not have crashed into Schauenburg.

Again on point, in Tassinari, the defendant livery was found in violation of § 327.54(1)(e), where pre-ride safety instructions were admittedly not given by personnel who had successfully completed a boater safety course. Id. at * 4. Not only was this statutory violation the very reason for the Court's finding that the livery was per se negligent, the violation was found to result in actionable negligence where the defendant livery could not prove that the violation "'could not' have contributed to the accident." Id. The Court's rationale:

> It is undisputed that Jeffrey Wilkerson panicked and that the watercraft was at full throttle until impact. However, greater knowledge often gives a greater

---

[9] We have not heard from Robert Tylla; nor have we heard anything on the subject from Ramone Tyler McGee (the individual who supposedly gave the pre-ride instructions, but whom did not successfully complete a boater safety course (see Pl's SMF at ¶ 4)). Although Defendants claim that McGee gave Tylla safety instructions, in reality, Defendants were only able to *assume* that the instructions were given, as that is, purportedly, company policy and procedure. See Troy Wilson Dep., filed in full by Defendants [DE 73-2-4], at p. 76, line 22, through p. 77, line 6.

[10] See Schauenburg Dep [DE 79-2-3] at p. 63, lines 7-21.

>sense of control.  Therefore, it is possible that if Jeffrey Wilkerson had received proper instruction in handling the watercraft, he might not have panicked.  Defendant has not shown that its violation of statutory rules "could not" have contributed to the accident.  Therefore, Defendant's fault is presumed.

Id. at * 4.

Defendants have failed in their burden to prove that their failure to provide safety instructions in conformity with their statutory obligation could not have caused or contributed to the subject accident.  As such, Defendants' liability is presumed. Id.  Defendants' Motion For Summary Judgment on the issue of liability, must be denied, as a matter of law.

WHEREFORE, Plaintiff PATRICK SCHAUENBURG, respectfully requests that this Honorable Court deny Defendants' their requested summary judgments [DE 71 and DE 72].

Respectfully submitted,

LAW OFFICES OF ROBERT ADER, PA
Bank of Ameirca Tower, Suite 3550
100 S.E. 2nd Street
Miami, Florida  33131
Tel: (305) 371-6060 / Fax: (305) 358-5917

By: ___s/ Elizabeth B. Hitt_____
ROBERT ADER
Florida Bar No.  335126
aderlaw@aol.com
ELIZABETH B. HITT
Florida Bar No. 176850
bethhitt@aol.com

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing document was served via electronic service CM/ECF this 25 day of June 2009 on:

Jeffrey W. Johnson, Esq
jjohnson@jlblaw.com
Johnson, Leiter & Belsky
Attorneys for Defendants:
    Key West Tours;
    Wilson-Girard, Inc.;
    Troy Wilson;
    Sherry Wilson
Blackstone Building, 3rd Floor
707 SE Third Avenue
Fort Lauderdale, Florida 33316

                                              By:   ___s/ Elizabeth B. Hitt_____
                                                        ELIZABETH B. HITT